The next case on our call of the docket is agenda number 22, case number 110170 Helen Uldrych v. Christopher D. Joyce, MD, et al. Counsel? Thank you. Good morning. May it please the court, counsel? My name is Mike Reisler and I'm here today on behalf of McNeil Hospital. The issue in this case is what limitation period applies to a hospital's counterclaim for implied indemnification against two physicians. We submit that the five-year provision in does not apply because of a specific exception in subsection E where indemnity is sought from a party whose negligence, and these are the exact words, quote, resulted in injuries or death by reason of medical malpractice, period, close quote. That's what we have here. So that section doesn't apply. Section 13-212A is inapplicable because by its terms that statute applies to, and these are the exact words, actions for damages for injury or death, close quote, and because this is also a point in controversy, quote, arising out of patient care, close quote, but McNeil's counterclaim is not an action for damages for injury or death, but rather an action for implied indemnity arising out of a well-recognized pretort relationship between the hospital as a blameless principal and the physicians as its apparent or ostensible agents. As we submit that the only applicable statute of limitations is the five-year statute, and that did not begin to run until McNeil settled with the plaintiff on July 25, 2008, its counterclaim against the doctors who had been sued by plaintiff was timely. If we are correct, the judgments below cannot stand. Correct. And there are well-recognized differences between contribution and indemnity. Maybe this is a good place to start with those differences. Let's go to Hayes. And Hayes says, quote, the basis for a contributor's obligation rests on his liability in tort to the injured party, close quote. So contribution is based on an apportionment of damages between the contribution plaintiff and the contribution defendant to the original plaintiff. Here, let's say the medical malpractice plaintiff, right? That's what it says. Implied indemnity is something different. Implied indemnity is based upon a pre-tort relationship. Well, let me just say one last thing about contribution. In contribution, the idea is that because of the nature of the action, it has characteristics that are sufficiently retentive of the original action for injury, for damages for injury or death. When you get to implied indemnity, you're talking about a quasi-contractual liability, not a tort liability. It's a quasi-contractual liability. That's what this Court was talking about in Columbus, Cuneo and some other cases that recognize implied indemnity. It's a quasi-contractual liability where the blameless principle is able to recover from the, based on a pre-tort relationship with the parties that have impliedly promised to pay. It's very different. It's not based upon apportionment at all. The appellate court's focus here was not, it was wrongly focused on the doctor's liability to the medical malpractice plaintiff, as would be true if we were talking about contribution, rather than on the nature of the doctor's liability to McNeil Hospital, which again was based upon the pre-tort relationship giving rise to the implied promise to pay. Ashley v. Evangelical Hospital case, though, didn't the first district appellate court expand pays to indemnity? Yes. Absolutely. So we'd have to overrule that. Correct. There's no two ways about it. To be very clear for the moment, we're not asking the court to re-examine Hayes. We believe Hayes was correctly decided based upon the nature of the contribution action. It is an action for damages for injury or death because even the contribution plaintiff is trying to pass on that liability to the contribution defendants. But in Ashley, we believe the appellate court wrongly focused on the liability that the defendants had to the plaintiff when this court has said that for indemnification you're focusing on the nature of the injury that the party seeking indemnity has sustained. Was the focus in Hayes Counsel more policy considerations with respect to medical malpractice rather than focus on the nature of the contribution act? I don't believe that's the case. There is a component to that case that talks about public policy, clearly, because there is a concern expressed in that case about long tail exposure, right? And remember in that case, the doctors are brought in as third parties. They were not parties to the original action, unlike this case. In this case, the doctors were in from the very start. They were the original defendants. You don't have that same long tail exposure in this case. Now, yes, it's true that in Hayes there is reference to the recently enacted statute that was addressing the long tail exposure and the so-called medical malpractice crisis of the late 1980s. And the court, though, was fitting the contribution action and the nature of that action into the language of 13212A. And they were recognizing the contribution as sufficiently retentive of the characteristics of the original action. But that's not true with implied indemnity as illustrated by Travers, which is an express indemnity case, but it is an indemnity case. I agree. And I know your position is that implied indemnity is a far field from contribution. But would you say at least that the Hayes decision takes a little of the gloss off the argument that relying on the verbiage in action for damages for injury or death against any physician, dentist, dot, dot, dot. I mean, you use that initially and say, hey, implied contribution, although closer, is not that either, right? Would you agree with that? I would. I think I have to disagree with that. I think contribution does fit within the statute and that implied indemnity does not fit within the statute. And as I said, we're not here challenging Hayes. Is the contribution action an action for damages for injury or death against a physician? Because you are passing on, you are passing on, you are passing on, your tort, your more than, if you, you're passing on a portion of your tort liability for injury or death. In this case, the underlying case was settled, right? I'm sorry? In this case, the underlying case was settled, right? Yes. So if we're focusing just on the case at hand, right, the looking at a case for contribution separate and apart from the underlying action, just looking at the words of the complaint, it wouldn't literally be an action for damages against the doctor, right? I'm not sure that I would totally agree with that. I think that based upon the nature of the case, it would fit within the language. I'm not prepared to say that Hayes was somehow extrapolating or stretching or finding some, that it fit within a penumbra of the language. I think it does come within the statute in a way that indemnity doesn't. Well, is this case as simple for us that if we believe that Hayes stood for the proposition that because of the public policy concerns, we were going to employ that statute of repose in a contribution action, if indeed it was policy concerns rather than a focus on the argument, does the opposing argument prevail then? I don't believe so. Because before you get to the public policy, you have to address the language. It has to, if the claim doesn't fit within 13212A, you never get to the public policy, right? I mean, you have to first be able to determine, as I started, whether the policy may come in afterwards. But I don't think the public policy can ever override a statute of limitations, a statute of, you know, the language, the language of the statute of limitations. Going to travelers. Let me ask you, you've cited American National Bank on page 8 of your brief. Yes. And there's this, it talks about the viability of an implied indemnity action after the Contribution Act. But then there's this statement. We also agree with the commentators that settlements between the principal and the plaintiff merit different consideration. Such a settlement has the effect of creating in the blameless principal an interest indistinguishable from the contribution interests of the other tortfeasors at fault. In fact, the Contribution Act should therefore apply. The release of the agent from liability to the plaintiff, as well as the preservation of the principal's implied indemnity claim depends then on the agents being named in the settlement. Were the agents named in the settlement here? I believe they were. They didn't settle later? No. I'm sorry. The settlement was held at one time, if I recall correctly. It was on July 25, 2008. It was in response to a policy limit time limit demand. So there is no, so I don't believe that that, I should say this. I don't believe that question was really developed on the record. I don't think the record necessarily answers that. But if I go back on my memory, I believe that the settlement was all at one time because it was in response to a policy limit time limit demand. If the agents were not, if the doctors and the suburban surgical or medical, whatever it was, were not named in the settlement, does American National give you some problems? I think that would be something for a remand. I don't think that that's really an issue, you know, that we're talking about today. I can't speak to what the releases actually may have provided. But again, they're not a record, as I understand it. We have talked about travelers in the brief, and I have to believe none of the court is familiar with travelers, a decision authored by Justice Kilbride a few terms back that I'll spare you all the details. But I do think that there is language in travelers that is directly applicable here in determining whether 13.212 applies or 13.205 applies. Now in travelers, the court says, and it's not even, it's coming to this conclusion based upon prior cases, and the court is saying that, quote, we have long held, so this is not just one decision in travelers, we have long held that it is the nature of the plaintiff, and here we're talking about the indemnity plaintiff, indemnity plaintiffs, injury rather than the nature of the facts from which the claim arises which should determine what limitations period should apply. And then the court goes on to say, to determine the true character of the cause of action, Armstrong, that's the earlier case involving indemnity, emphasized that the focus of the inquiry is on the nature of the liability and not on the nature of the relief sought. So how do we apply that language here? Before you do that, if we disagree with your distinction between implied indemnity and contribution, is the only way to get to where you want us to go is for us to find the traveler's If there is no distinction between indemnity and contribution, then I do think that the court's task, depending on how you look at it, could be easier or harder, right? But I don't believe that based upon the well-recognized distinction between contribution and indemnity that that's a road that you have to go down, and I don't think it's a road that you should go down. And I think that if the court were to hold that indemnity fits within 13212A, then I think that it sacrificed its decision in travelers, and in all of the cases leading up to travelers, which recognized as, and it may be bad form to read to the court, from its own decisions, but when the court is saying quite clearly that we're looking at the nature of what would in this case be the hospital's injury, as opposed to the nature of the medical malpractice plaintiff's injury, I think the court would be, in trying to obviate the distinction between indemnity and contribution, it would effectively be overruling travelers in all the cases that led up to travelers. And I don't think the court wants to go down that, I submit the court does not need to go down that road. So the answer is yes? The answer would be yes, but then you're reversing a lot more cases than, you know, yes, you're going to have to reverse travelers, effectively. No, I asked the opposite, though. I said that if we don't buy your distinction between implying indemnity and contribution, would we have to overrule Hays? Because travelers came after Hays, didn't it? Yes. Right. Absolutely, yes. Yes. But I guess, but the position we're advocating doesn't require you to reverse any Supreme Court case. It's asking you to reexamine Ashley and Roberson in light of travelers, but we're not asking you to reverse any Supreme Court case. Now, the claim for implied indemnification, based on a pre-tort relationship, is a mismatch for the four-year statute proposed in 13.2.12a. Ten words in, the statute states that the action must be one for damages for, quote, injury or death, close quote, against the physician. Under this court's analysis in travelers, the nature of the injury to the hospital is the focus of determining which statute applies to which person. Otherwise, based on the language that I read out earlier, the nature of the liability is quasi-contractual. It's interesting that if you look at the statute of repose in 13.2.12a, the language is, if I can get it for a moment, it says, whether based on tort or breach of contract. And, of course, for implied indemnity, we're talking about something that is quasi-contractual. But if you look at 13.2.14, which was the statute involved in travelers relating to construction-related activity, it says tort, contract, or otherwise. Actually, I think you can argue that 13.2.14 is actually broader than 13.2.12. Is 13.2.12 broad? Yes. Is it all-inclusive? No, it is not all-inclusive. And the best evidence of that is the fact that, for example, a spoliation of evidence claim has been held not to be subject to 13.2.12. Now, you might say, you can't have a spoliation of evidence claim until you have a patient. But that doesn't mean that 13.2.12 applies. It does not apply in every case. And we submit that it should not apply here when the nature of the hospital's liability is not the same as might be the nature of the liability if it were a contribution claim to the original plaintiff. Just briefly, since we did talk a little bit about public policy, we submit that the five-year allowing an implied indemnity claim will not give rise to stale or long-term exposure claims because unlike the doctors who were sued in Hayes and in Ashley, Doctors Joyce and Zawacki were already in the suit from the very beginning. On the other hand, allowing such claims will ensure that liability is not foisted upon a blameless principal. And we submit those goals are not contrary to 13.2.12a. If an insurance company has the same potential for liability in a suit for implied indemnification as it does if the patient had brought the direct action against the doctor as it did here, the insurance company is still able to predict its future liability. Doctors Joyce and Zawacki were always potentially 100% liable when they were named as original defendants. I see my time is up. If I can just conclude by saying that the appellate decision to include implied indemnity claims unduly expands Section 13.2.12. And while limiting the exposure of doctors is certainly a legitimate concern, that section does not expressly apply to actions for implied indemnity under the current legislative scheme. Our claim was timely under 13.2.05, and we ask you to reverse and remand for further proceedings. Thank you. Thank you, Counsel. Good morning. My name is Julie Tischer, and I represent Dr. Zawacki and Suburban Surgical. McNeil is asking this Court to ignore the plain language of 13.2.12. McNeil is also asking this Court to disregard the legislative intent behind enacting Section 13.2.12. In Hayes, this Court said that the intent behind 13.2.12 was limiting a physician's exposure to liability for damages for injury or death arising out of patient care under all theories of liability. The language in 13.2.12 could not be more inclusive, and that was intentionally done by the legislature. It's the limitation period for all actions against physicians and hospitals. It is not confined to medical malpractice. It's not confined to medical negligence. It's the limitation statute for all actions against physicians or hospitals which arise out of patient care. How do you distinguish travelers than where, or how can you say that McNeil's liability is in any sense less contractual than the underlying claims in travelers, which had to do with construction bonds? And in travelers, we said the action was because of a failure to construct because of the problems in connection with the construction. I think that travelers is in opposite to this case because of the language in 13.2.12, the unique language in that statute which says all actions arising out of patient care. That kind of language is not present in the construction statute of limitations, 13.2.14. And that sets up an irreconcilable conflict between the language of 13.2.12 and the analysis that this court requested in an implied indemnity action, or actually an express indemnity action outside of a case involving patient care. The legislature commands the court to look to whether the allegations in the complaint arise out of patient care. That's what the statute requires us to do. So we can't ignore, as travelers instructs us to do in an express indemnity setting, we cannot ignore the facts from which the claim arises because the statute requires us to do so. Of course, McNeil argues that this is not an action arising out of patient care. The injury is the fact that they were wholly blameless, according to them, but they were forced to settle on a theory of vicarious liability, and therefore the action is not arising out of patient care. It's more akin to the contractual, or in this case the vicarious liability aspect. And how do you say that is still covered by the statute? Because of the plain language of the statute and because of the reasoning that this court made in the Hayes decision. If you plug in the claim in indemnity action for a contribution action, the Hayes reasoning applies with equal force in the implied indemnity setting as it does in the contribution setting. It's no different. What's happening here is the third party plaintiff is seeking damages against the third party defendant for negligence arising out of patient care. That's the effect. It's no different in an implied indemnity action than it is in a contribution action. And that's what this court described in Hayes. But in a contribution action, you're assessing it based upon percentage of fault. There's some responsibility. In this, counsel has said, you're passing it on to somebody that really didn't engage in the negligence, is getting stuck with the bill, basically, because of the apparent agency of these two people. And you're not going to do anything about it. I think that distinction of apportionment versus a complete passing on of culpability makes no difference when you look at the language of 13212. The language of 13212, and we can't forget the legislative intent behind the enactment of the statute. The language of 13212 says any action, whether for damages for injury or death arising out of a tort, breach of contract, or otherwise, is governed by the statute. And that's not true. It's not in the statute, but it's in the statute. And you can't change it. And you can't replace a claim by 13212. Is the language broader in these statutes than it was in the construction statute repose? Yes. The language of 13212 is broader because of the arising out of patient care language. It broadens it. That type of language is not found in the construction statute of limitations. The construction of statute of limitations includes the or otherwise language, but here we have any action arising out of a tort, breach of contract, or otherwise, is governed by the statute. And that's not true. The only exceptions to 13212 are cases involving fraudulent concealment or illegal disability. The legislature had the option of creating additional exceptions and chose not to do so. The legislature also had the option of confining 13212 for actions for personal injury. It didn't do that. It said actions for injuries, actions for damages for injuries, actions for damages for personal injuries. It said actions for injuries or death, not personal injuries. And we know that if the legislature wanted to make that distinction, they could have done so because they did so in 13204, which is limited to actions based upon personal injury. I ask opposing counsel this. Does the record reflect whether or not your clients and Dr. Joyce were named in the settlement agreement wherein the hospital settled on? The record does not reflect which defendants paid what monies, if that's what the court is asking. The record does not reflect that. But there was just one settlement agreement that included all defendants at the same time? Yes. Okay. Thank you. The inquiry, the relevant inquiry under 13212 then becomes did the action arise out of patient care? And this court has a body of law on that particular issue where the court has suggested that this is very broadly interpreted in order to effectuate the intent behind the legislation. In both Brucker and Orlock, this court defined arising out of patient care as originating from, growing out of, flowing from. Injuries that have their origin in or are incidental to a patient's medical care. This court has held that 13212 applies to any action arising out of patient care under all theories of liability, whether then in effect or not. That's the language in Hays, under all theories of liability. So you don't see any inconsistency with your position in Travelers in that this is the type of action it is, one arising out of patient care? Exactly. Exactly. I don't think Travelers is pertinent to the issue that's before this court. I think you're comparing apples and oranges. You're confusing, not you, McNeil, pardon me, is confusing law in an express indemnity case that can't be compared with 13212. They're irreconcilable. 13212 asks and dictates that you do something that Travelers doesn't allow. So if we look to whether the allegations here arise out of patient care, this court has told us we need to look to the underlying complaint and the allegations contained in McNeil's amended counterclaim. There's no question it arises out of patient care. The Aldrich has sued the defendant physicians for the negligent performance of a surgery. In its amended counterclaim, McNeil mirrors those allegations. It says that the defendant physicians negligently performed the surgery, negligently failed to diagnose a complication after surgery resulting in Mr. Aldrich's death. So the allegations in the amended complaint prove that this is an action which arises out of patient care. The policy considerations in play which prompted 13212's enactment could not be more clearly articulated or better understood. I don't think there's ever been a statute of limitations which had a better understood legislative intent. Insurers were beginning not to insure physicians in the state of Illinois. They were raising premiums. Doctors were having difficulty obtaining insurance. They were leaving the state. They were stopping their practice if they couldn't afford their premiums. This is what the legislature was responding to. And in responding to that, their goal was to set an outside hard time limit, by which time any action under any legal theory had to be filed against the court. If we carve out the exception that McNeil is urging you to do in this case, you completely undermine the policy behind that statute. If we carve out implied indemnity actions against physicians and surgeons, then the purpose behind the statute is completely undermined. You can't take that out and say, okay, we're going to have unpredictability in this particular area of action against physicians. It undermines and ruins the effectiveness of the statute. This court has recognized that those cutoffs, at certain points in time, eliminate a cause of action before it even accrues. But the court and the legislature were willing to accept those rare, harsh results because of the importance of the public policy behind the statute. McNeil argues that its claim wouldn't extend the physician's exposure if 13205 were applied. Well, that makes no sense. It would be a violation of the statute. Because if 13205 applies to the facts of this case, under McNeil's argument, McNeil had until 2013 to file its implied indemnity action against these physicians. 13212 cuts that action off in 2007. That's six additional years of liability exposure for these physicians, if 205 is employed. McNeil argues an insurer's ability to predict liability of a physician is not diminished by utilizing 13205. Again, that makes no sense. We're talking, in just this case alone, about a six year additional exposure if 205 is used instead of 212. If McNeil's theory is accepted, McNeil had 10 years from the date of the patient's care to file their implied indemnity action. When we know 13212 says outside time limit for an action arising out of patient care is four years. On the one side, we have the plain language of the statute. We have the well-documented legislative intent. And McNeil offers, in response to that, 13205, the catch-all statute of limitations. When we know that the legislator excluded indemnity actions arising out of medical malpractice from 13204E. 13204 is a statute of limitations dealing with implied indemnity actions. And the legislature excluded medical malpractice actions, indemnity actions in the medical malpractice setting, from 13204E. And McNeil is telling you, well, they excluded it from there so they could dump it into 13205. They excluded an action against a physician in an implied indemnity setting so that it can go to the uncovered provisions of 13205. That makes no sense. To then extend the physician's exposure for an additional year, five years, rather than four, when 13212 limits it. It makes a lot more sense that what the legislature did in excluding the medical malpractice actions from 13204E. And that's the way it should be. And here, McNeil went on and said, the legislation not excluding allegations arising out of medical negligence was that they intended it to all fall under 13212. McNeil also argues, well the application of 13212 thwarts our ability to file an implied indemnity action. Well, first of all, under the facts of this case it certainly did not. McNeil was named the applicant for the application of 13212. He was named as a defendant in this case from the first moment it was filed. In 2005, they are served. In 2006, they write a letter. Their counsel writes a letter to the physician's counsel saying, we expect indemnification in this case. Please let us know if you are going to do that and if you are not, whether you will agree to a waiver of the statute of limitations. In 2007, that four-year period of repose ends and McNeil has filed nothing. In 2008, it files its implied indemnity action. Do you This is not a case where McNeil was denied or thwarted in its ability to file its implied indemnity action. For whatever strategic reasons, it elected not to do so, although it had two years after being brought in the suit to do so. McNeil also argues that its indemnity claim doesn't fall within 13212 because it's not a claim for damages for injury or death. But Hayes rejected this argument in the contribution setting. And this is the language, and I'm going to read it to you because it clearly applies with equal force to an indemnity action. The third-party plaintiff is seeking from the third-party defendant those damages proximately caused by the negligent acts of the third-party defendant, which the third-party plaintiff may be obligated to pay in the underlying suit. This leads us to the conclusion that an action for contribution is an indemnity action. An action for damages under the medical malpractice statute of repose, if you slip the word implied indemnity in for contribution, the analysis is exactly the same. You said a moment ago that for whatever reason, strategic or not, McNeil didn't elect to file until much later. Of course, they're claiming that under 205, they would have five years from the date of settlement or any liability or payment actually made. Couldn't there be a situation where they were not brought into the suit until after the statute reposed and expired and they would have no relief? Yes. And the legislature in this court has accepted that. They've elevated the policy considerations behind 13212 over the fact that sometimes, on rare occasions, the cause of action will be barred before it accrues. We found that in the Orlock decision. The Ashley court, I think, summarized this well. It said, a suit for implied indemnity against a physician arising out of patient care exposes the insurance company to the same liability as a patient's lawsuit. And if that's the purpose behind the enactment of the statute, it has to apply with equal force in the implied indemnity setting or the force of the statute is lost. I wanted to spend a minute, too. McNeil makes a big deal out of the fact this isn't an action for injuries. This is an action for quasi-contractual implied indemnity. And the appellate court in Walsh v. Berry Harlem rejected that type of analysis. The Walsh case was a case where plaintiffs sued her physician under the Illinois Consumer Fraud Act, seeking damages for medical expenses. And specifically said, I am not saying this is medical negligence. I'm saying this is my fraud action for the recovery of medical expenses. Therefore, 212 doesn't apply. I agree with you, but even if it's an action just for medical expenses, it still falls within the language of 13212. That 13212 was not limited to actions for personal injury. That it extended to all actions for damages which arise out of patient care. The appellate court reasoning here was sound. It started with the statute. It looked at the arising out of language. It looked at this case court's interpretation of arising out of, and it looked to the legislative intent behind the statute. My colleague is going to discuss the distinction between our situation and the traveler's case. But before I sit down, I would just like to ask that this court affirm the appellate court's decision and the trial court's decision, dismissing the complaint with prejudice. Thank you. Good morning, your honors. May it please the court and counsel, Karen DeGrand on behalf of the other defendant, Dr. Joyce, and I see my time is short. Ms. Tischer has covered most of our points. I'll make a few quick points. And one is to follow up on the question that Justice Carmier posed to Ms. Tischer about actions being cut off, not like our case, because the case is in the get-go, but actions in effect being cut off before a potential identity plaintiff has the opportunity to react, say, a very late filing of the underlying case, for example. That's not only contemplated, I believe counsel mentioned the Brucker case, but expressly contemplated in Hayes. And the important, all-encompassing public policy that should lead this court, I submit, to affirm the appellate court's decision, was recognized in that case that said, you know, this is the decision that the legislature made that is more important to have this four-year reposed period enforced as a matter of policy, that we can live with the fact that in certain situations, contribution actions can be cut off, can expire before the contribution plaintiff would have the opportunity to file an action. And this court was willing to live with that result in Hayes, and we asked the court to apply the same public policy in this instance. Briefly, a few additional points about the Traveler's case. I believe that contrary to what Mr. Rees says, that the way to preserve all of these decisions of the court is to uphold the appellate court, not to enforce the appellate court's decision. The Traveler's case is a case that addresses a completely different situation. It addresses two statutes of limitation that no one contends apply in this case. And as Justice Carmeier brought out with Ms. Tischer, if you look at the specific language of the two statutes in play, 214 and 212, 212 has that all-encompassing arising out of language, 214 simply does not. To the extent that the hospital emphasizes the nature of the injury aspect, I think it's interesting that the hospital repeatedly defines its injury merely by restating its legal theory. And as we know from all of the cases, the legal theory doesn't govern which statute is applicable. And I will close by asking the court to keep in mind that if they're, in my opinion, and I think it's correct borne out by the cases in the statute, Traveler's doesn't have application in this situation. If the court looks at Traveler's, it should not do so to the exclusion of Orlock and Brucker, which interpret the statute that is in play here, 13212. Orlock and Brucker have the language that is applicable. Orlock and Brucker have the language that define the arising out of standard. And I'll close by commenting that the upshot of the hospital's position in this case would have such a lengthy extension of the statute of limitations for these types of indemnity claims, long beyond the four-year statute of repose, long beyond the two-year statute that applies to every other indemnity claim arising out of a, implied indemnity claim arising out of a personal injury situation. I'd submit that that was not the intent of the legislature. And on Dr. Joyce's behalf, ask that the lower courts be affirmed. Thank you for your time. First of all, we're not asking you to ignore any language in any statute. If you look at 13212, and from what I heard from opposing counsel, they want to talk about arising out of patient care. To the exclusion of the words leading up to that, which start with, no action for damages for injury or death. Before you ever get to arising out of patient care, you have to start with no action for damages for injury or death. Now, our implied indemnity claim seeks to recover defense for damages for injury or death. Now, our implied indemnity claim seeks to recover defense for damages for injury or death. Now, our implied indemnity claim seeks to recover defense for damages for injury or death. And what is the legal basis for your vicarious liability? It's based on the theory that they were all entitled to the damages for injury or death, or apparent injuries. A theory that was recognized by this court in Gilbert v. Sycamore, and as to implied indemnity, recognized in Columbus Cuneum. Both of which come after Hayes, and come after the last time 13212 was amended back in the 1980s. Well, does that theory fall within the language of 212 that says, you know, after what you just cited in the statute, it says whether based upon tort or breach of contract or otherwise. Then it goes on to say arising out of patient care. Well, let's be clear. 13212 says based upon tort or breach of contract or otherwise. That's correct. But if we go back to travelers and the cases leading up to travelers, we're talking about the nature of the doctor's liability to us, not the nature of either our liability to the medical malpractice plaintiff, or their liability to the medical malpractice plaintiff. It's very different. Their liability to us is based on the pretort relationship recognized in Columbus Cuneo, and it is quasi-contractual. It is not the tort liability that is the subject of the contribution action. Remember, contribution is limited to torts. And the liability that gets reapportioned is based on a tort liability. That is not the nature of their liability to us. The nature of their liability to us, again, is based upon an implied promise to pay when we are only vicariously liable because of their liability to us. And that is not to the plaintiff, to the medical malpractice plaintiff. Or an action arising out of patient care, though, right? You would agree with that? As far as arising out of patient care. Well, you'd never have the indemnity action if there wasn't an action arising out of, in this particular case, unless there was an action arising out of patient care. You'd have to at first have a medical malpractice plaintiff, yes. Just as for a disfoliation claim that is not subject to the statute, you have to have a medical malpractice plaintiff first. It arises out of patient care, but 13212A doesn't apply to the disfoliation of evidence claim, right? So, again, that is just saying that we have a medical malpractice plaintiff at the start of the lawsuit doesn't tell us whether the doctor's liability in Armstrong is recognized by travelers is going to be treated the same as the contribution liability in Hayes or the direct liability that the doctors have to the plaintiff from Orlock or Brucker. Totally separate and distinct. Look, the distinction between indemnity and contribution is well recognized. Most recently, I think the court referred to it in Virginia vs. Northern Insurance, but it's all over the appellate of Supreme Court. Very, very different. We talk about public policy a little bit for the moment. We're not talking about any long-tail exposure here. The doctors were 100% liable from the first day they were sued, February 9, 2005. As far as different limitation periods are concerned, look, the legislature has decided that for whatever reason, claims on written contracts and implied or unwritten contracts are subject to longer limitation periods or reposed periods than claims for personal injury or arising out of patient care. That's a fact. The legislature made that decision. Your job as the court is to simply decide which statute, 13212A or 13205, because we're not hearing anything anymore about 13204, 13212A or 13205 applies. But the limitations period was set by the legislature, and your job is simply to construe which one should apply and whether implied indemnity fits more under 13205 or 13204. We're not asking for that there be any stale claim perpetuated for years. Their liability is no greater to us now than it was at the start of the lawsuit when they were sued in 2005. There is no either or in this case. It's not simply a matter of deciding whether you're going to apply 13204, which is the two-year statute, or 13212A, which is the medical malpractice statute or reposed. A hospital may seek indemnification from a doctor without the action being one for damages for injury or repose. There is no either or. And based on travelers, we submit that neither section, neither 13204 nor 1312 applies when the focus is on the doctor's liability to the hospital and not on the doctor's liability to the original medical malpractice plaintiff. We hear a lot about the language of the statute, but the claim that's at issue here is a common law claim recognized by this court. And the focus of this court has not been on the main action between the plaintiff and the original defendant or, as is the case with contribution, again, between the plaintiff versus the original defendant. Instead, it is on the nature of the doctor's liability to us based on the pretort relationship. We thank you for your time today in hearing this case, and again, we ask you to reverse the appellate court and to remand. Thank you. Thanks to all of counsel for your arguments this morning. Case number 110170, Helen Aldrich versus Dr. Joyce et al. Agenda number 22 is taken under advisement.